STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**
**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **D.R.**

**No. 20-0828** (Kanawha County 19-JA-740)


**MEMORANDUM DECISION**


Petitioner Mother B.B., by counsel Michael M. Cary, appeals the Circuit Court of Kanawha County's September 24, 2020, order terminating her parental rights to D.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Matt Smith, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without affording her an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2019, the DHHR filed an abuse and neglect petition regarding two children not at issue on appeal and, at that time, named the father as a nonabusing respondent parent. Those children were placed with the father and petitioner. By December of 2019, the DHHR determined that the father was abusing and neglecting those children and filed an amended petition that named additional children whom he fathered who were abused and neglected or abandoned. The petition further named petitioner as a respondent parent to D.R. The DHHR filed a second amended petition alleging that petitioner allowed the father to have contact with D.R. despite the DHHR alerting her of the pending child abuse and neglect proceedings against him and her agreeing to not allow him contact with D.R. Specifically, the DHHR alleged that in December of 2019, one month after D.R.'s birth, a service provider discovered the father in petitioner's home with D.R. and that the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

father became irate when the service provider stated that he and petitioner were in violation of the circuit court's order, resulting in D.R.'s removal. After D.R. was removed, the same provider transported petitioner and the father to visit D.R., and on one occasion, the father became so angry at petitioner for allegedly cheating on him that he threatened to beat her and another man to death. The service provider did not allow the parents to visit D.R. and returned the father and petitioner back to their house. During another visit, the service provider overheard the father joke about hiring someone to beat his mother for her cooperation with the DHHR. Finally, the DHHR alleged that the father and petitioner failed to provide the necessary food, clothing, supervision, and housing for D.R. since his birth in late October of 2019.

Thereafter, in February of 2020, petitioner waived her right to a preliminary hearing, and the circuit court ordered the DHHR to provide petitioner with adult life skills and parenting classes, drug screening, supervised visitations, and drug treatment. The circuit court further ordered petitioner to submit for a drug screen immediately after the preliminary hearing, but petitioner refused and left the courthouse without providing a sample. Shortly thereafter, petitioner was arrested for violating the terms of her probation by testing positive for fentanyl but was released on home incarceration in March of 2020 with the requirement that she immediately attend inpatient drug rehabilitation.[2] However, petitioner failed to immediately enroll into an inpatient drug rehabilitation program. Instead, petitioner enrolled in a short-term drug detoxification program in mid-April of 2020 but left after a few days and went to another facility in another county, where she again discharged without finishing the program. During this period, petitioner also secretly married the child's father. As a result of petitioner's failure to stay enrolled in treatment in accordance with the terms of her home incarceration, petitioner was again arrested and incarcerated in May of 2020.

The circuit court held an adjudicatory hearing in May of 2020. The DHHR presented evidence that the father exposed D.R. to domestic violence and that he and petitioner failed to submit to drug screens at the preliminary hearing. The DHHR also showed that petitioner was aware that D.R. was to have no contact with the father but admitted that she needed the father's help with the newborn and asked the father to help care for the child. Finally, the DHHR presented evidence that petitioner was currently incarcerated for absconding from drug treatment, which was a required term of her probation and subsequent home incarceration. Upon hearing the evidence, the circuit court adjudicated petitioner as an abusing parent. In July of 2020, petitioner was released from jail but failed to inform her Child Protective Services ("CPS") worker that she was released. Around that time, petitioner was also removed as a participant in the Drug Court Program for her failure to comply with its terms and conditions.

In September of 2020, the circuit court held a dispositional hearing. Petitioner moved for a post-dispositional improvement period. The DHHR moved to terminate petitioner's parental rights. In support, the CPS worker testified that petitioner was arrested for absconding from drug rehabilitation and failed to contact the DHHR to set up services upon her release. Petitioner testified, admitting that she relapsed in drug abuse, which led to her most recent arrest and dismissal from the Drug Court Program. Petitioner further stated that she was presently enrolled in a drug rehabilitation program in Huntington, West Virginia. The circuit court noted that

---

[2]According to the record, petitioner previously pled guilty to grand larceny.

petitioner was offered services such as random drug screening, supervised visits, parenting and adult life skills classes, substance abuse treatment, and bus passes, yet failed to avail herself of these services or complete drug treatment. The circuit court denied petitioner's motion for an improvement period. Ultimately, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that the termination of her parental rights was necessary for the child's welfare. The circuit court terminated petitioner's parental rights by order entered on September 24, 2020.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period. According to petitioner, she was willing to cooperate with services if they were offered. Petitioner concedes that she relapsed during the proceedings below but has since completed a drug detoxification program and long-term inpatient drug rehabilitation program.

West Virginia Code § 49-4-610(3)(B) provides that a circuit court may grant a parent a post-dispositional improvement period when the parent "demonstrates, by clear and convincing evidence, that [she] is likely to fully participate in the improvement period." Here, it is clear from the record that petitioner was unlikely to fully participate in a post-dispositional improvement period based on her failure to comply with court-ordered services that were implemented after the preliminary hearing, which included supervised visitations, regular drug screening, adult life skills and parenting classes, and drug treatment. Petitioner refused to submit for a drug screen after the preliminary hearing and subsequently tested positive for fentanyl, resulting in the revocation of her probation and incarceration. However, upon petitioner's release in March of 2020, she was ordered to complete a short-term drug detoxification program and immediately enroll in and complete long-term inpatient drug rehabilitation. Despite her case plan's requirements for drug treatment and the conditions of her home confinement, petitioner failed to immediately enroll in

---

[3]The father passed away in November of 2020. The permanency plan for the child is adoption by his foster family.

the appropriate treatment programs. Instead, she enrolled in a drug detoxification program in mid-April of 2020 but left after a few days and went to another facility in another county, where she again discharged without finishing the program. Due to petitioner's violations of the terms of her home incarceration, she was again arrested and reincarcerated in May of 2020. While petitioner asserts that she was willing to participate in services provided by the DHHR, the evidence presented below was that she failed to contact the DHHR upon her release from incarceration in May of 2020 to reinstate services.

Finally, petitioner contends that she has since completed drug treatment, but she fails to provide any evidence of such completion. Further, petitioner ignores the fact that our review is limited to the record before the circuit court, at which point it was uncontroverted that she failed in this regard. On the contrary, the evidence below showed that petitioner failed to follow through with services, cooperate with the DHHR, or follow the terms of her case plan, probation, and home incarceration. As such, the evidence overwhelmingly showed that petitioner was unlikely to participate in an improvement period, given her failure to cooperate in and complete services throughout the entirety of the proceedings, her multiple failures to stay in drug treatment, and her multiple incarcerations. The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). We have also explained that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the [parent] is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004) (citation omitted). Because petitioner failed to establish that she was likely to fully participate, we find no error in the circuit court's denial of her motion for a post-dispositional improvement period.

Likewise, we find that the circuit court did not err in terminating petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(d)(3), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

As outlined above, the evidence shows that petitioner failed to follow through with a reasonable family case plan. Although petitioner claims her supervised visitations went well prior to her incarceration, petitioner failed to complete parenting and adult life skills classes and, most importantly, failed to complete drug treatment. The circuit court correctly found that there was no

4

reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. Although petitioner contends that termination was not in the child's best interest, she provides no evidence to support this argument. In fact, the evidence supports the termination of petitioner's parental rights as necessary for D.R.'s welfare as she had not corrected the conditions of abuse and neglect, and infant D.R. deserved permanency. Insomuch as petitioner argues that she should have been given more time to correct her issues of abuse and neglect, we have held the following:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Accordingly, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 24, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 20, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton